UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

DEAN HUMPHRIES,

               Defendant.

------------------------------------X

12 Cr. 347 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-28-13

**Sweet, D.J.**

On April 19, 2013, following a jury trial, Dean Humphries ("Humphries" or the "Defendant") was found guilty of the following charges: (i) Count 1: threatening communications, in violation of 18 U.S.C. § 875(c), a Class D felony; and (ii) Count 2: cyber stalking, in violation of 18 U.S.C. § 2261A(2), a Class D felony. For the reasons set forth below, Humphries will be sentenced to a term of 30 months' imprisonment to be followed by three years supervised release. Defendant will also be required to pay a special assessment of $200.

**Prior Proceedings**

On August 22, 2012, Humphries was named in a two-count

Superseding Indictment 12 CR 347 (RWS) in the Southern District of New York. Count 1 charges that from August 2011 through April 3, 2012, in the Southern District of New York and elsewhere, Humphries sent email messages threatening to injure and kill a woman ("Victim-1"). Count 2 charges that from August 2011 through April 3, 2012, in the Southern District of New York and elsewhere, the Defendant sent messages to Victim-1 and others and made at least one telephone call to a member of Victim-1's immediate family that caused Victim-1 substantial emotional distress and placed Victim-1 in reasonable fear of death of, and serious bodily injury to, Victim-1 and members of Victim-1's immediate family.

On April 19, 2013, following a jury trial, Humphries was found guilty of Counts 1 and 2 of Superseding Indictment 12 CR 347 (RWS).

Humphries' sentencing is scheduled for October 29, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second

Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

3

>   (7) the need to provide restitution to any victims of
>       the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Humphries' personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

In the Fall of 2008, Victim-1 had commented favorably on an online music blog operated by the Defendant. Humphries, at the time, resided in San Diego, California. Although Victim-1 and the Defendant had never met in person, they maintained

4

friendly contact via email and instant messaging until approximately January 2009.

On January 15 and 16, 2009, Humphries and Victim-1 had a disagreement via email which was centered, in part, by the Defendant's frustration that Victim-1 had failed to note his birthday (January 16th). As a result of the disagreement, on January 16, 2009, Victim-1 communicated with Humphries via email and apologized for any hurt feelings she might have caused. She also told the Defendant that they should no longer communicate. This was Victim-1's last email to Humphries. However, the Defendant continued to send Victim-1 emails and other online messages which over time became more frequent and increasingly threatening. Humphries set up fake e-mail and Facebook accounts in Victim-1's name in order to continue harassing her.

Humphries threatened the Victim-1 with a horrific death and also sent Victim-1 gruesome photos of body parts, corpses, sexual torture and other images to further cause Victim-1 great fear and intimidation. He invaded the lives of her friends and family, causing Victim-1 to suffer daily anxiety and constant fear. At one point Humphries told Victim-1 that he would find her, named the home address of one of her friends, and then threatened to lie in wait outside her friend's home.

5

Victim-1 began to fear being outdoors alone and suffer anxiety attacks. Victim-1 was particularly concerned about the personal information Humphries demonstrated he had about her, her family and her friends.

Beginning in August 2011, Humphries made even more threatening communications to Victim-1. These communications included threats of physical violence against the victim. In about March 2012, Humphries began emailing Victim-1 more frequently and included more explicit threats of violence.

An arrest warrant was issued for the Defendant in the Southern District of New York on March 30, 2012. The Defendant was arrested in the Southern District of California (San Deigo) on April 4, 2012. The Defendant remained in custody until his bail release on June 21, 2012. Humphries then returned to his residence in San Diego, California, where he was under the supervision of Pretrial Services.

Humphries' bail conditions included, among other things, a protective order prohibiting him from having any contact with Victim-1, her family and her friends. However, the Defendant resumed harassing Victim-1 via email after his bail

release and attempted to dissuade her from testifying against him. The Defendant sent Victim-1 "hundreds" of messages over several weeks.

The Government informed this Court of the Defendant's communications in a letter dated November 15, 2012. In a follow-up hearing on November 28, 2012, this Court directed Humphries not to have any contact with Victim-1 under any circumstances and warned the Defendant that any violation of the Order would result in the issuance of an arrest warrant. Humphries was continued on bail. There is no information to indicate that he has made any other attempts to contact the victim.

The Defendant's trial commenced on April 17, 2013. Victim-1 testified at Humphries' trial that she felt isolated and hopeless as she was in constant fear and knew that Humphries had contacts in New York. She also testified that Humphries demonstrated he knew where she was at every moment. Victim-1 feared she would be murdered, raped or tortured. During her testimony, Victim-1 was tearful and still appeared frightened. Victim-1's friends and her mother also testified about the emotional impact of Humphries' actions. Due to Humphies' threats, Victim-1 became depressed and anxious and ultimately

7

sought counseling.

All told, Humphries sent Victim-1 more than 1,000 emails over a three-year period, often dozens a day.

On April 19, 2013, a jury found the Defendant guilty of threatening communications and cyberstalking.

**The Relevant Statutory Provisions**

For Counts 1 and 2, the term of imprisonment is 5 years on each Count pursuant to 18 U.S.C. § 875(c) and 18 U.S.C. §§ 2261(A) and 2261(b)(5).

For Counts 1 and 2, if a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years on each Count, pursuant to 18 U.S.C. § 3583(b)(2).

For Counts 1 and 2, the Defendant is eligible for not less than one or more than five years probation by statute on each Count, pursuant to 18 U.S.C. § 3561(c)(1).

For Counts 1 and 2, the maximum fine is $250,000 on

8

each Count pursuant to 18 U.S.C. § 3571(d). A total special assessment of $200 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2012 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility and term of imprisonment:

Counts 1 and 2 shall be grouped into a single Group pursuant to § 3D1.2(b) as the offense involved the same victim and two or more acts connected by a common criminal objective. As the Counts involve offenses of the same general type to which different guidelines apply, the offense level which produces the highest offense level shall be used. The Guidelines applicable to Count 2 produces the higher offense level.

Count 2 charges Defendant with cyberstalking. The guideline for a violation of 18 U.S.C. § 2261A(2) is § 2A6.2(a), which has a base offense level of 18. Because the offense involved a pattern of activity of stalking, threatening or

harassing the same victim, an increase of two levels is applicable, pursuant to §2A6.2(b)(1)(D). Pursuant to § 3C1.1, an increase of two levels is applicable because the defendant obstructed justice by violating a protective order during the pendency of his trial, sending the victim "hundreds" of messages while at liberty on bail, and by attempting to dissuade her from testifying at his trial.

According to the PSR, the total offense level is 22.

As outlined below, the Defendant has one criminal conviction.

On April 10, 1998, the Defendant pled guilty to the sale/transport of controlled substance, possession amount of cocaine, possession of controlled substance with intent to sell, possession of marijuana and cultivation of marijuana. The Defendant was sentenced to one year in jail and three years' probation. This criminal conviction does not result in any criminal history points. Therefore, the Defendant has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 22 and a Criminal History Category of I, the guideline range for imprisonment is

41 to 51 months.

The guideline range for a term of supervised release is at least one year but not more than three years on each count, pursuant to § 5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, the defendant is not eligible for probation, pursuant to § 5B1.1, application note #2.

The fine range for the instant offense is from $7,500 to $75,000, pursuant to §§ 5E1.2(c)(3)(A) and (4). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.17 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court

also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is not warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553(2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.

Pursuant to § 2A6.1, Application Note 4(B), if the offense involved substantially more than two threatening communications to the same victim or a prolonged period of making harassing communications to the same victim an upward

departure may be considered.

Defendant has symptoms consistent with diagnosis of Post-Traumatic Stress Disorder ("PTSD"), Obsessive Compulsive Disorder ("OCD") and adjustment disorder with mixed anxiety and depressed mood. Humphries' PTSD may be a result from his incarceration for a previous offense in California. While incarcerated, the Defendant lived in constant fear for his life due to threats of violence and death, and following his release, he continued to suffer great anxiety as a result of his experiences in prison. Humphries sought counseling for his mental health issues in 2012, following his bail release for the instant offense. Defendant is currently seeing a counselor twice a week.

In a psychological assessment, Humphries has acknowledged that he had anticipated developing an intimate relationship with Victim-1, and he became enraged when she terminated their communications. A mental health specialist who evaluated Humphries reported that the Defendant presented recent paranoid ideation regarding Victim-1 (e.g., continuing to believe that she monitored his websites, despite a lack of evidence to support this belief). Humphries' communications with Victim-1 appear to be the product of Humphries' mental

illness and his persistent belief that Victim-1 wished to remain in contact with him.

Notably, Humphries did not take any step to carry out his threats or to make contact with Victim-1 in person. There is no evidence that Humphries attempted to travel to see Victim-1 or otherwise meet Victim-1 in person. A mental health professional who has evaluated the Defendant believes that Humphries' risk of continued stalking and stalking-violence is low. See Psychological Evaluation of Dean Humphries by Dr. Barry Rosenfeld (June 7, 2012). The mental health professional believes that Defendant's symptoms would worsen if he is re-incarcerated. See Addendum to Psychological Evaluation by Dr. Barry Rosenfeld (Aug. 1, 2013).

There is no question that the Defendant caused Victim-1 significant mental harm. The Defendant also violated the Court's Order intended to maintain the integrity of the judicial process when he contacted Victim-1 during the pendency of his trial. However, the Defendant's mental health issues and the totality of Humphries' history and characteristics warrant a downward departure from the Guidelines in this instance.

**The Sentence**

The Defendant will be sentenced to 30 months' imprisonment for Counts 1 and 2 to run concurrently. It is recommended that his imprisonment be served at a facility where he can receive treatment for his mental health issues. The imprisonment is to be followed by three years' supervised release, on each Count, to run concurrently with each Count.

As mandatory conditions of his supervised release: (1) Humphries shall not commit another federal, state or local crime; (2) Humphries shall not illegally possess a controlled substance; (3) Humphries shall not possess a firearm or destructive device; and (4) Humphries shall cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The Defendant shall participate in a mental

15

health program approved by the U.S. Probation Office. The Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. The Defendant shall contribute to the costs of services rendered not covered by third-party payment, if the Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

(2) The Defendant will participate in a program approved by the U.S. Probation Office, which program may include testing to determine whether the Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

(3) The Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of

the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(4) The Defendant shall not have any contact (telephone, email, Facebook, chat rooms, forums, etc.) with Victim-1, her family, her friends or any other persons associated with Victim-1.

(5) The Defendant shall be subject to random monitoring of his computer activities.

Humphries is directed to report to the nearest Probation Office within seventy-two hours of release from custody to commence his term of supervised release. The Defendant is to be supervised by the district of his residence.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be

due immediately.

The Defendant is viewed as a good candidate for voluntary surrender. He has kept all court appearances, and he is not viewed as a flight risk or a danger to the community.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 29, 2013.

It is so ordered.

**New York, NY**
**October 28, 2013**

_____
ROBERT W. SWEET
U.S.D.J.

18